**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0257, <u>Michael J. Glick, DDS v. Chocorua Forestlands Limited Partnership; Chocorua Forestlands, LLC v. Michael J. Glick, DDS & a.; Chocorua Forestlands Limited Partnership & a. v. Michael J. Glick, DDS</u>, the court on June 22, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. Michael J. Glick, D.D.S., appeals an order of the Superior Court (<u>Houran</u>, J.), following a bench trial, in which the trial court: (1) determined that a parcel of land known as the "Lee Lot" was not included in Glick's rights of first refusal; (2) found that Chocorua Forestlands Limited Partnership (CFLP) retained certain rights of way, and, alternatively, was entitled to an easement by necessity; (3) concluded that the size of the Lee Lot was 20.20 acres and the four lots subject to Glick's rights of first refusal totaled approximately 206 acres; and (4) denied Glick's motion for contempt. We affirm.

This is the third time that these parties have come before us. A detailed account of the underlying facts and procedural history can be found in our previous decisions, <u>see</u> <u>Glick v. Chocorua Forestlands Ltd. P'ship</u>, 157 N.H. 240 (2008); <u>Michael J. Glick, DDS v. Chocorua Forestlands Limited Partnership; Chocorua Forestlands, LLC v. Michael J. Glick, DDS</u>, No. 2009-0628 (N.H. Dec. 7, 2010). We recite only those facts pertinent to this appeal.

In 1985, CFLP owned four so-called "Masonian Lots" on the Ossipee and Moultonborough town line that largely surround Glick's land. In 1986, CFLP and Glick entered into an agreement (the 1986 agreement) concerning their respective properties. As part of the agreement, CFLP received certain easements across Glick's property, and, in return, Glick received rights of first refusal in the four lots if CFLP ever wished to sell them.

In 1998, CFLP entered into a purchase and sale agreement with a third-party buyer for the four lots, and, pursuant to the 1986 agreement, informed Glick that he had 30 days to exercise his rights of first refusal by tendering $375,000. <u>Glick</u>, 157 N.H. at 244. The purchase and sale agreement with the buyer was ultimately cancelled, leading to litigation over whether Glick's rights of first refusal were still exercisable. <u>Id</u>.

We eventually determined that Glick had valid rights of first refusal arising from the 1986 agreement. Id. at 249-50. Accordingly, we held that Glick was entitled to specific performance. Id. at 250. Additionally, we remanded for the trial court to determine whether the purchase price in the purchase and sale agreement was inflated, as alleged by Glick. Id. at 251-52.

Upon remand, the trial court determined that the four lots comprised 220.9 acres, and that their total fair market value was $125,913. CFLP and Chocorua Forestlands, LLC (Chocorua) (the current owner of the Lee Lot) appealed, and we affirmed. See Michael J. Glick, DDS, No. 2009-0628, at 1-2.

Following that decision, CFLP sent a draft quitclaim deed to Glick concerning the conveyance of the four lots to him. The draft deed contained a metes and bounds description of the four lots, but it excluded a 20.20 acre parcel — the Lee Lot — from its description of one of the Masonian Lots (Lot 11). It also contained provisions reserving certain rights of way for the benefit of CFLP.

Glick did not accept the draft deed because he disputed the rights of way and the exclusion of the Lee Lot. CFLP and Chocorua then filed a petition for declaratory judgment, to quiet title, and for equitable relief. They claimed that the Lee Lot was located within Lot 11, and, because CFLP never owned the Lee Lot, the Lee Lot was not subject to Glick's rights of first refusal. CFLP also asserted that, pursuant to the 1986 agreement, it was entitled to reserve rights of way, or, alternatively, it was entitled to an easement by necessity to reach its surrounding land.

In response, Glick filed a motion to enforce court order and for contempt, based upon the draft deed's exclusion of the Lee Lot from the four lots to be conveyed to him. According to Glick, the Lee Lot was located some distance away from Lot 11; hence, he asserted, the entirety of Lot 11 was subject to his rights of first refusal. Glick also objected to CFLP's reservation of rights of way across the four lots and to CFLP's proffer of a quitclaim deed instead of a warranty deed, as the purchase and sale agreement required.

A four-day bench trial ensued, during which the trial judge took a view. Subsequently, the trial court issued the order that is the subject of this appeal.

In its order, the trial court first determined the location of the Lee Lot. The trial court observed that, at trial, each party provided expert testimony from a licensed land surveyor concerning this issue. Although the two experts agreed on the chain of title to the Lee Lot, including the fact that CFLP never owned the Lee Lot, they disagreed on the location of the Lee Lot.

According to CFLP's expert, David Douglass, the Lee Lot was located within Lot 11. The trial court noted that Douglass based his opinion upon tax

2

maps, tax cards, how others in the vicinity of Lot 11 — including, at one point, Glick — treated the Lee Lot in the past, and the existence of a barbed wire fence, which ran roughly parallel to the town line, that Douglass considered to be a boundary fence marking the southern boundary of the Lee Lot. In contrast, Glick's expert, Paul King, opined, for various reasons, that the Lee Lot was located several miles away from Lot 11.

The trial court weighed the competing evidence and ultimately agreed with Douglass's conclusion. In addition to finding that tax records supported its determination, the court found the barbed wire fence, which it observed during its view, to be "particularly significant." Given the fence's location, its relatively straight trajectory, and the fact that it parallels the town line, the court further agreed with Douglass that the fence likely serves as a boundary of the Lee Lot. Thus, the court concluded that the Lee Lot was located within Lot 11; accordingly, because CFLP never owned the Lee Lot, the court determined that the Lee Lot was not included in Glick's rights of first refusal.

The court next addressed whether CFLP validly reserved certain rights of way over the four lots. The trial court observed that, based upon the language in the 1986 agreement, "it is plain that CFLP's intent was almost solely concerned with access to its surrounding land." Although the agreement itself did not specifically include language regarding rights of way in the event Glick exercised his rights of first refusal, the trial court noted that both Glick and the president of CFLP testified that they believed CFLP entered into the agreement so as to maintain access to its surrounding land. Additionally, the trial court highlighted the fact that "CFLP's intent to maintain continued access to its properties has been documented throughout the post-Agreement relationship between the parties and this litigation." Accordingly, the court concluded that when Glick and CFLP entered into the agreement, "it was the intent of the parties that CFLP would . . . retain reasonable rights of access to its surrounding timber land" and that CFLP never intended to sell the four lots without reserving rights of way to access its remaining property.

The trial court also agreed with CFLP that, in the alternative, CFLP should be granted an easement by necessity. Based, in part, upon the court's view of the property, the court found that the land CFLP owned in this area is normally used for timber. The court credited the testimony of CFLP's president, who testified about the difficulties and impracticalities of accessing CFLP's surrounding land without an easement. The court further found that access to CFLP's land could not "be gained without disproportionate effort and expense." Accordingly, the court ruled that CFLP was entitled only to rights of way that were essential to access its surrounding land.

The trial court next determined the size of the Lee Lot and the four lots to be conveyed to Glick. With regard to the Lee Lot, the court adopted the rationale and conclusion of Douglass, who decided, based upon various

boundaries and the acreage referenced in several deeds, that the Lee Lot comprised 20.20 acres. As for the size of the four lots subject to Glick's rights of first refusal, the court also agreed with Douglass's assessment that the lots, without the Lee Lot, comprised a total of approximately 206 acres. Given the modified acreage, the court recalculated the fair market value of the four lots to be $117,420, and ordered that the deed to be delivered to Glick for the four lots be a warranty deed as contemplated by the purchase and sale agreement.

Finally, the court denied Glick's motion for contempt, concluding that the record did not support Glick's assertion that the draft deed violated prior court orders. Glick unsuccessfully sought reconsideration, and this appeal followed.

On appeal, Glick argues that the trial court erred by locating the Lee Lot within Lot 11. He argues that the evidence presented at trial does not support the trial court's placement of the Lee Lot within Lot 11, asserting, among other things, that there was no evidence of an "out-conveyance" from Lot 11. Rather, he claims, as he did at trial, that the evidence supports locating the Lee Lot several miles away from Lot 11. Because, according to Glick, the Lee Lot is not located within Lot 11, he contends that his rights of first refusal extend to the entirety of Lot 11.

Glick further argues that the trial court erred by concluding that CFLP was entitled to rights of way over the four lots. He also claims that the trial court erred by deciding, in the alternative, that CFLP was entitled to access its surrounding lands via an easement by necessity. Finally, Glick argues that the trial court erred by denying his motion for contempt.

As the appealing party, Glick has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned order, Glick's challenges to it, the relevant law, and the record submitted on appeal, we conclude that he has not demonstrated reversible error. See id.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.

**Eileen Fox,
Clerk**

4